IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PATRICIA PAVELSKI,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

OPINION AND ORDER

18-cv-451-bbc

---

      Plaintiff is seeking review of a final decision by defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g), and finding her capable of performing medium-level work. Dkt. #6. Plaintiff seeks remand of that decision, arguing that the administrative law judge who decided the case (1) failed to rely on any medical evidence in dismissing the state agency psychologists' findings that plaintiff had a severe mental impairment; and (2) did not adequately consider the effects of plaintiff's non-severe mental impairment and arm and hand problems in assessing plaintiff's residual functional capacity. For the reasons explained below, I conclude that the administrative law judge did not explain his findings adequately with respect to plaintiff's mental impairments and did not support the findings with substantial evidence in the record. Accordingly, I will remand the case for reconsideration of plaintiff's mental impairments and limitations. Plaintiff has not shown that the administrative law judge erred in failing to adopt more restrictive physical limitations related to her arm and hand problems.

      The following facts are drawn from the administrative record (AR).

RECORD FACTS

Plaintiff Patricia Pavelski contends that she became disabled on November 9, 2013 because of a variety of physical and mental conditions, including diabetes and diabetic neuropathy, depression, anxiety, hypothyroidism, fatigue, inability to concentrate and complete tasks and carpal tunnel syndrome. AR 13, 35-36. Plaintiff last worked as a part-time accountant but quit her job in November 2013 because she was no longer able to comprehend the basic skills required for the job. AR 39. She was 53 years old when she applied for benefits on January 3, 2014. AR 13, 18, 62.

A. Relevant Medical Evidence

1. Treatment of mental impairments

Plaintiff has had diabetes since young adulthood and uses an insulin pump, the care and use of which is monitored by an endocrinologist, Dr. Michael Sheehan. AR 577. On November 18, 2013, plaintiff saw her primary physician, Dr. Jeffrey Jones, to discuss memory loss that she had been experiencing for the past few years. She told Dr. Jones that she suspected that her memory loss was caused by her diabetes and numerous episodes of "hypoglycemic unawareness." AR 282. Dr. Jones referred plaintiff to Dr. Richard Hurlbut for a neuropsychological evaluation, which took place on December 4, 2013. AR 403. In his January 16, 2014 report, Dr. Hurlbut noted that plaintiff scored in the low average range in all areas of memory functioning on the Wechsler Memory Scale Fourth Edition. AR 403-04.

On May 19, 2014, plaintiff again saw Dr. Jones for problems with her mood and memory loss. AR 472. He reviewed Dr. Hurlbut's findings and noted plaintiff's decline; he stated that she had exhibited a higher aptitude in the past and was a "high achiever." Dr. Jones suspected that a lifetime of hypoglycemic episodes had affected plaintiff's memory and that she was experiencing depression as a result of her cognitive decline. Id. He prescribed Wellbutrin and referred plaintiff to a neurologist for a consultation. AR 474.

On August 18, 2014, plaintiff saw neurologist Dr. Marie Tomasi. Plaintiff told Dr. Tomasi that the Wellbutrin has helped with her energy, sleep and cognitive functioning. Although plaintiff reported having had suicidal thoughts in the past, she said she no longer had them. During the examination, plaintiff struggled with recalling a few details but otherwise exhibited normal attention, concentration and fund of knowledge. Although Dr. Tomasi believed it was possible that plaintiff had a mild cognitive impairment, she noted that further testing was required to determine plaintiff's functioning level. Dr. Tomasi recommended a brain scan and further neuropsychological testing at the beginning of 2015 to compare with plaintiff's December 2013 tests. In listing plaintiff's medical conditions, Dr. Tomasi wrote that plaintiff has reactive depression as a result of the cognitive problems she had suffered in the past few years. AR 429-34.

On December 15, 2014 and January 5, February 2 and May 4, 2015, plaintiff saw psychiatrist Dr. Jude Stenovich for anxiety and depression. AR 557-74. On each visit, Dr. Stenovich noted that plaintiff had a severe major depressive affective disorder and anxiety with intermittent suicide ideations, ongoing daytime fatigue and insomnia. In December

2014, he started tapering plaintiff's Wellbutrin, prescribed Pristiq and recommended therapy, which plaintiff started. AR 574. By February 2, 2015, Dr. Stenovich noted that plaintiff's anxiety, irritability, suicide ideations and insomnia had improved. However, her moderate depression remained unchanged. AR 563-64. In May 2015, plaintiff again reported moderate anxiety symptoms related to interpersonal conflicts. AR 558.

2. State agency psychologist opinions

During the initial review of plaintiff's application for benefits, Dr. David Biscardi reviewed plaintiff's medical records and concluded on April 21, 2014 that plaintiff was severely impaired by an organic mental disorder and had moderate difficulties in maintaining concentration, persistence or pace. Dr. Biscardi concluded that plaintiff had the capacity to understand, remember, carry out and sustain the performance of one-to-three-step tasks, complete a normal workday, interact with co-workers and supervisors and adapt to stressors and changes associated with simple, routine competitive work activities. AR 67. On January 13, 2015, at the reconsideration level of review, Dr. Jan Jacobson reviewed the record, which included the more recent August 2014 neurology consultation, and affirmed Dr. Biscardi's findings, noting that Dr. Hurlbut's opinion was entitled to great weight "insofar as moderate limitations are opined." AR 83-84. (Neither psychologist reviewed Dr. Stenovich's psychiatric treatment notes from late 2014 and early 2015.)

3. Arm and hand problems

On August 18, 2014, plaintiff complained to Dr. Tomasi that her hands and feet were cold to the touch most of the time and that her arms often went numb from the elbows down while she was sleeping or biking. AR 431. On September 24, 2014, she complained to Dr. Jones about having cold hands and described symptoms compatible with carpal tunnel syndrome. AR 469. On January 17, 2017, a nerve conduction study revealed that plaintiff had bilateral carpal tunnel syndrome, cubital tunnel syndrome on the right side and chronic bilateral C5 radiculopathy with evidence of mild denervation. AR 695-96.

B. Administrative Decision

Following an administrative hearing on February 7, 2017, Administrative Law Judge Michael Pendola issued a written decision on April 3, 2017, finding that plaintiff was severely impaired by type 1 diabetes mellitus and hypothyroidism. AR 15. He also noted that plaintiff had several non-severe impairments, including organic mental disorder, anxiety, carpal tunnel syndrome and cervical radiculopathy. AR 15-16. In particular, the administrative law judge found that plaintiff had no more than mild limitations in the four broad areas of mental functioning known as the "paragraph B" criteria in 20 C.F.R. Pt. 404, Subpt. P. App. 1. AR 16. With respect to concentration, persistence or pace in particular, he noted that the "record fails to show any mention of distractibility" and that plaintiff is able to drive, prepare meals, read, manage funds and handle her medical care. Id. The administrative law judge concluded that plaintiff retained the residual functional capacity

5

to perform medium work as long as she avoided exposure to hazardous machinery and unprotected heights. AR 17.

In reaching his decision, the administrative law judge gave little weight to the opinions of Dr. Jones and the state agency psychologists, explaining that the opinions were inconsistent with and unsupported by the findings of plaintiff's treating providers. AR 17. (The administrative law judge made specific findings with respect to plaintiff's activities and the objective evidence that I will discuss in more detail below.) Relying on the testimony of a vocational expert, the administrative law judge determined that plaintiff was able to perform her past skilled, sedentary work as a payroll supervisor, benefits manager and accountant as she performed those positions and as others generally perform them. AR 22.

OPINION

In reviewing an administrative law judge's decision, I must determine whether the decision is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). This deferential standard of review

> does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination.

Id. See also Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009) (administrative law judge need not discuss every piece of evidence but "must build a logical bridge from evidence to conclusion"); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he

6

ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

A. Mental Impairments

The state agency psychologists determined that plaintiff was severely impaired by an organic mental disorder and anxiety, had moderate limitations in concentration, persistence or pace and was limited to performing one-to-three-step tasks. The administrative law judge gave these findings little weight, finding that plaintiff was not severely impaired by any mental condition because she had only mild difficulties in the four relevant functional areas, including concentration, persistence or pace. In reaching this conclusion, he generally referred to plaintiff's "routinely normal" examinations, conservative treatment, significant symptom improvement with treatment and daily activities (including driving, preparing meals, reading and managing her personal funds and medical care). However, the examples of "normal" examinations, conservative treatment and significant symptom improvement that the administrative law judge cited relate primarily to plaintiff's diabetes, which was well-controlled with medication and an insulin pump. AR 17 (citing AR 549-50 (Dr. Sheehan's March 6, 2015 review of insulin pump) and AR 659-60 (Dr. Sheehan's April 27, 2016 report regarding treatment and progress of plaintiff's diabetes)).

The Court of Appeals for the Seventh Circuit has made it clear that "[t]he Step 2 determination is a de minimis screening for groundless claims," Meuser v. Colvin, 838 F.3d 905, 910 (7th Cir. 2016), "intended to exclude slight abnormalities that only minimally

impact a claimant's basic activities." O'Connor-Spinner v. Colvin, 832 F.3d 690, 697 (7th Cir. 2016). In this case, plaintiff reported memory problems to her treating physician as early as 2013, and tests performed by Dr. Hurlbut in December 2013 confirmed that she had low average memory functioning. The administrative law judge discounted the test results on the ground that no treating physician had noted disabling limitations. However, Dr. Jones specifically discussed plaintiff's reported limitations and referred her to a neurologist for an evaluation. On August 18, 2014, neurologist Dr. Tomasi believed that plaintiff had a possible mild cognitive impairment that would require further testing to determine her functioning level.

In addition, plaintiff reported suffering from depression and anxiety, for which Dr. Jones prescribed Wellbutrin. Although plaintiff told Dr. Tomasi that the Wellbutrin was helping her energy, sleep and cognitive functioning, psychiatrist Dr. Stenovich diagnosed moderate depression and anxiety and switched her antidepressant four months later. Plaintiff's anxiety had improved on the new medication by February 2, 2015, but Dr. Stenovich made it clear at that time that plaintiff's moderate depression remained unchanged. AR 563-64. The administrative law judge failed to discuss plaintiff's depression or Dr. Stenovich's findings in any significant detail, focusing instead on other providers' descriptions of her mood. Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009) (administrative law judge must consider all relevant medical evidence and not cherry-pick facts that support finding of non-disability while ignoring evidence that points to disability finding). For example, the administrative law judge seems to have discounted the severity of plaintiff's depression in part

because Dr. Sheehan and Dr. Tomasi, listed her diagnosis as "situational depression." However, they are not mental health providers. The state agency psychologists who reviewed these same medical records determined that plaintiff's mental health impairments rose to the level of severe. Beardsley v. Colvin, 758 F.3d 834, 839 (7th Cir. 2014) ("[R]ejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation."). Although Dr. Stenovich's treatment notes postdate the state agency psychologist opinions, they provide further support for the severity of plaintiff's depression, which the administrative law judge should have considered.

Finally, as plaintiff notes, even if her depression and anxiety did not rise to the level of severe impairments, the administrative law judge must consider the impact of all of her impairments, even those that are not severe. Denton v. Astrue, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal."). Although the administrative law judge determined that plaintiff had only mild limitations in all four areas of mental functioning, he did not address those limitations in his residual functional capacity assessment.

For these reasons, I am reversing the decision of the administrative law judge and remanding the case for further consideration of plaintiff's mental impairments. On remand, the administrative law judge should consider carefully the findings of the state agency psychologists and all of plaintiff's treating providers and consultants, including Dr. Hurlbut and Dr. Stenovich, and provide sound reasons for the weight he attributes to those findings.

9

If he believes that the findings lack necessary detail, he should consider contacting plaintiff's physicians for further information, referring plaintiff for a consultative examination or calling a medical expert. Skinner v. Astrue, 478 F.3d 836, 843 (7th Cir. 2007) (noting that administrative law judge is not required to order examination but may do so if applicant's medical evidence is insufficient). The administrative law judge would also be likely to benefit from the state agency psychologists' review of the entire medical record, including plaintiff's more recent psychiatric treatment. Finally, whether or not the administrative law judge finds any of plaintiff's mental impairments to be severe, he should determine what limitations, if any, are caused by those impairments and fully explore the effect of those limitations on her ability to engage in competitive employment. Denton, 596 F.3d at 423; O'Connor-Spinner, 832 F.3d at 699.

## B. Arm and Hand Problems

Plaintiff does not challenge the administrative law judge's step two finding that she is not severely impaired by carpal tunnel syndrome, but she contends that he ignored evidence of decreased functioning in her hands as a result of the condition. Denton, 596 F.3d at 423 (internal citations omitted) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."). In particular, she points to her complaints of having cold hands and the nerve conduction studies that confirmed carpal tunnel and cubital tunnel syndromes. However, plaintiff has not cited any medical evidence

10

specifically linking her arm and hand symptoms to any specific functional limitations on her hands. At the administrative hearing, plaintiff testified that she had not "really thought too much about her [hand pain] until the last year and a half when they started like giving me so much pain at night." AR 45-6. Otherwise, there is very little evidence in the record concerning plaintiff's arms or hands or the effect of her pain on her daytime functioning. Accordingly, I find that it was reasonable for the administrative law judge to conclude from the evidence in the record that plaintiff's complaints of cold and numbness in her arms and hands did not require any specific restrictions.

## ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff Patricia Pavelski's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 22d day of April, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge